ADONIRAM J. SMITH v. THE BOARD OF STATE AUDITORS.

[See 80 Mich. 205.]

*State bounties—Construction of act.*

Act No. 23, Laws of 1864, providing for the payment of a State bounty of $100 to soldiers enlisting after its passage, and credited under any call or order made or issued *since* January 1, 1864, applies only to soldiers who enlisted under the call of February 1, 1864.

*Mandamus.*    Submitted November 18, 1890.    Denied
May 5, 1891.

Application for *mandamus* to compel respondent to
allow relator his claim for bounty under Act No. 23,
Laws of 1864.    The facts are stated in the opinion.

*Patterson & Wood,* for relator.

*B. W. Huston,* Attorney General, and *Jay P. Lee,* for
respondent.[1]

GRANT, J.    The relator's petition is filed in this case
to obtain the writ of *mandamus* to compel the respond-
ent to allow his claim for $100, State bounty, under Act
No. 23, Laws of 1864.

Petitioner shows that he enlisted in Company H,
twenty-third regiment Michigan volunteer infantry, on
September 3, 1864; that he was duly credited to the
township of Watertown, where he was enrolled, and where
he resided at the time of his enlistment, on the quota of
said township, under a call of the President made after
the 1st day of January, 1864.

He first applied to this Court for a writ of *mandamus*
to compel the Auditor General to issue his warrant for
this claim.    *Smith v. Auditor General,* 80 Mich. 205.
The writ was refused, for the reasons which will be found
stated in that opinion.    The relator, after that decision,
presented his claim to the respondent, which now answers,
admitting its refusal, and denies that he is entitled to
the writ, because—

1. He does not state in his petition upon what call of
the President or military authority of the United States
he was credited at the time of his enlistment.

2. The records of the war department of the United

---

[1] Mr. Lee made the oral argument.

States government show that he was credited under the call of the President dated July 18, 1864.

It becomes immaterial to decide the first point, in view of the fact that the answer alleges upon which call he was credited. This allegation must be taken as true, inasmuch as the relator does not controvert it, and has demanded no issue of fact.

The petitioner's legal right depends upon the construction of section 8 of the above-mentioned act. That part of the section involved is as follows:

" There shall be paid from the war fund of this State a uniform State bounty of $100 to each person   *   *   * who may hereafter enlist and be mustered into the military or naval service of the United States, and who shall be credited on the quota of this State,   *   *   * under any call or order of the President or military authorities of the United States,   *   *   * *made or issued since the first day of January, A. D. 1864.*"

This act was passed February 4, and approved February 5, 1864. One call had been made February 1, 1864, of 200,000 men. Four other calls were made during the year 1864, dated, respectively, March 14, April 23, July 18, and December 19. The claim of the relator is that the act includes bounty to all soldiers who were enlisted and credited upon calls subsequent to its passage, as well as upon those prior thereto. This depends entirely upon the meaning of the word "since," used in the act. It is defined by Webster as meaning—

"In the time past, counting backward from the present; before this or now; from any time forward to the present."

We are cited to no instance in which this word has been used with reference to future time. It necessarily refers to something past, and never extends into the future. As used in this act, it means any call or order made or issued since the 1st day of January to the 4th

day of February, 1864. But, if any doubt existed as to the sense in which it was used, the Legislature put it at rest by this same act. Section 6 made provision for local bounties by townships and cities, and provided for a bounty to soldiers—

"Who shall be enlisted and mustered into the military or naval service of the United States from such township or city, to fill the quota of such township or city, on any call for volunteers made by the President of the United States since January 20, 1864, *or which he may hereafter make.*"

This shows conclusively that the word "since" was used by the Legislature in this act in its usual and well-understood meaning. There had been but one call during the time to which either clause could apply. Manifestly, therefore, it is of no avail to say that, there having been but one call, the Legislature would have specified that call, if they had intended that the act should have been limited to that call. To sustain the relator's position it would be necessary to hold that the Legislature gave to this word two different meanings in the same act. To so hold would be manifestly absurd, especially in view of the fact that the meaning contended for is neither natural, usual, nor reasonable. The records of the war department show that under the calls above made, after the passage of this act, 27,725 men were furnished by Michigan. Under the relator's claim these would all be entitled to bounty, involving an expenditure by the State of $2,772,500. If interest should be added, as claimed by relator, the amount in round numbers would be $6,000,000. Besides these are the 7,313 men who enlisted under the call of February 1, 1864, and are within the decision of *Smith v. Auditor General.* The creation of such a debt can rest only on clear legislative intent. It is a significant fact that no such claim was made until after the lapse of 25 years.

The relator's claim is not aided by the act of March 2, 1865, authorizing the issue of bonds to the amount of $1,000,000, nor by the act of March 21, 1865, authorizing the issue of $500,000 more, for the purpose of paying the State bounties. These acts did not refer to the bounties provided for by any particular law, but provided for the payment of State bounties authorized under any law of the State. On February 4, 1865, the Legislature passed an act authorizing the payment of $150 to one class of volunteers, and $200 to another. These also were covered by the above acts providing for the bonds.

This act has twice been before this Court. *People v. Hammond*, 13 Mich. 247; *People v. Quarter-Master General*, 19 Id. 384. By these decisions the act was held to apply only to those who enlisted under the call of February 1, 1864, and not to those who had enlisted prior to that date. The relator in *People v. Hammond* enlisted March 12, 1864, and claimed to have enlisted on the faith of the act of February 5. The call of February 1 was for 500,000 men. By the military authorities this act was construed as an additional call for 200,000 men. The township to which the relator in that case was credited had not furnished its quota under the 300,000 call of October 17, 1863. While the question of subsequent calls was not involved in these cases, yet, in my judgment, they clearly hold that the act applies only to the call of February 1. Mr. Justice CAMPBELL in the latter case said:

"This law was construed in *People v. Hammond* as applicable only to those enlisting and enrolled under the last call for 200,000 men in February, 1864."

But a reference to the history of that time will show that the relator did not and could not have enlisted in reliance upon the bounty provided by this act. On May 14, 1864, the military department of the State issued

general orders No. 3, discontinuing the bounty theretofore paid by the State, except as to those re-enlisted as veterans in the field. July 21 of the same year Gov. Blair issued a proclamation, in which he says:

"As an inducement to enlist, the government of the United States will pay a bounty of one hundred dollars to recruits enlisting for one year, two hundred for those enlisting for two years, and three hundred for those enlisting for three years. Such local bounties will be paid as the people of the several towns, wards, and sub-districts may authorize, in pursuance of law. *No State bounty can be paid.*"

See pamphlet prepared by the Auditor General, January, 1872, entitled—

"Acts of the Legislature and orders of the Governor of Michigan relative to the payment of State bounties to volunteers."

There was no action on the part of the State authorities, nor any common understanding at the time, showing that this act was construed to include subsequent calls. It is a fact, shown by municipal records, and which will be remembered by the men of those days, that large local bounties were paid. These, and the bounties offered by the United States, constituted the sole pecuniary inducement for enlistments. It is further apparent that the State government construed this act as applicable only to the call of February 1, from the retiring message of Gov. Blair, January 5, 1865, wherein he stated that an additional appropriation of about $700,000 would be required to pay the bounties due under that act. If the act had included subsequent calls, the amount stated should have been more than $3,000,000.

The writ must be denied.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. CAHILL, J., did not sit.